IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| HONGZHI QILIN, | CV 15-129-BLG-CSO |
| Plaintiff, | **ORDER** |
| vs. | |
| CSAA GENERAL INSURANCE COMPANY, | |
| Defendant. | |

This declaratory judgment action between Plaintiff Hongzhi Qilin ("Qilin") and Defendant CSAA General Insurance Company ("CSAA") raises issues regarding underinsured motorist coverage. Now pending is Qilin's Motion to Remand (*ECF No. 6*). Having considered the parties' arguments and the applicable law, the Court will deny the motion for the following reasons.

I.  **BACKGROUND**

This action was filed in Montana's Eighteenth Judicial District Court in Gallatin County. CSAA timely removed the action to this Court on December 11, 2015. *ECF No. 1*.

The Complaint alleges that on May 4, 2014, Qilin suffered bodily injuries in a motor vehicle collision in Gallatin County, Montana. *ECF No. 1-2* at 1. Qilin alleges that he recovered the limits of the responsible motorist's bodily injury liability coverage, but has not been fully compensated for his injuries and damages. *Id.* at 2. After CSSA refused to pay the full amount of Qilin's claims for underinsured motorist benefits, he filed this action seeking:

> 1. A declaratory judgment that he is entitled to more than CSAA has offered;
>
> 2. An order compelling CSAA to pay an amount that will compensate him for his injuries and damages, together with attorney fees and costs; and
>
> 3. For such other and further relief as the Court may deem just.

*Id.* at 3.

The parties exchanged demand and offer letters. On October 27, 2014, and July 1, 2015, CSAA offered $15,327.00 to settle Qilin's underinsured motorist ("UIM") claim. *ECF Nos. 8-1, 8-2*. On May 14, 2014, November 24, 2014, December 16, 2014, February 27, 2015, and June 18, 2015, Qilin demanded that CSAA pay the policy limits of $100,000. *ECF No. 9-1*.

## II. PARTIES' ARGUMENTS

Qilin argues that CSAA has not met its burden to demonstrate that the amount in controversy exceeds $75,000 because: (1) the representations in the cover sheet and in the notice of removal that assert Qilin demands over $75,000 are false and unsupported by evidence; (2) CSAA's offer to settle the claim for $15,372 contradicts its assertion that the amount in controversy exceeds $75,000; and (3) CSAA has a duty under Montana law to make a reasonable settlement offer but places the value of the claim at $15,372, thus it cannot meet its burden to prove the amount in controversy is met. *ECF No. 7* at 4–7.

Next, Qilin argues that even if the amount in controversy requirement is met, the Court should exercise its discretion to decline jurisdiction because the matter involves an issue of state court concern. *Id.* at 7. He argues that: (1) there is no non-discretionary claim that warrants retention of the declaratory action; (2) cases generally favor rejecting federal jurisdiction in declaratory actions involving insurance issues; and (3) CSAA has a forum available in state court for the resolution of the issues in this case. *Id.* at 9–10.

Finally, Qilin argues that if the case is remanded, the Court should award him "costs and fees in the sum of $3,000, which represents fifteen hours of researching and drafting this Motion and Brief." *Id.* at 11.

In response, CSAA argues that the amount in controversy exceeds $75,000 because the case is seeking the $100,000 policy limit. It argues that this amount is demonstrated through the demand letters from Qilin. *ECF No. 9* at 2. It argues that although it disputes the value of the case, Plaintiff values the claim in excess of $75,000, and has continuously pursued the full policy amount of $100,000, as demonstrated through Plaintiff's demand letters.

Next, CSAA argues that the Court should not exercise its discretion to remand the case because there is no evidence of forum shopping, the application of Montana law involves settled issues of state law, and the "pleadings suggest no issue the Court needs to address other than the damages suffered by the Plaintiff." *Id.* at 4–6.

Finally, CSAA argues that attorney's fees would not be appropriate because it has an objectively reasonable basis for removal given that the demand letters demonstrate Qilin's intent to seek

$100,000. *Id.* at 7. It also argues that if the Court were to remand the case under its discretionary power, it should not award attorney's fees because that does not demonstrate the initial removal was deemed improper. *Id.*

In reply, Qilin argues that the case should be remanded, given the strong presumption against removal jurisdiction, because the defendant misrepresented the basis for removal, and that CSAA's "lack of honesty in its removal documents should weigh heavily in deciding whether to exercise federal court jurisdiction." *ECF No. 12* at 1–2.[1]

Qilin argues that CSAA further failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, and CSAA bears the burden to prove that it does. *Id.* at 3. Finally, Qilin argues that the Court should decline jurisdiction because "all of Qilin's witnesses are in Bozeman" and "it will be inconvenient and expensive to present testimony of any of these witnesses in Billings." *Id.* at 5. He argues that the sole reason CSAA removed this case was for

---

[1] The Court does not agree with Qilin that CSAA attempted to mislead the Court. *See ECF 12 at 2.* The Court always discourages *ad hominem* arguments, finding them neither helpful nor respectful to the judicial process. *See, e.g.,* "Ten Commandments for Trial Lawyers" and "Montana Values", Lawyers' Deskbook & Directory at 289-290.

convenience of CSAA's counsel, given that the case was filed in Gallatin County, so the case should have been removed to the Butte division, rather than the Billings division. *Id.*

## III. DISCUSSION

### A. AMOUNT IN CONTROVERSY

An action may be removed to federal court based on diversity jurisdiction, which requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332. The "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commun., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). When a complaint does not include the "specific amount of damages sought, the party seeking removal under diversity bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Id.* at 397 (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir.2007)). To meet this burden, the parties may submit summary-judgment-type evidence relevant to the amount in controversy, but removal cannot be based simply upon conclusory allegations. *Singer v. State Farm Mut.*

*Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). The court must resolve all ambiguity in favor of remand to state court. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

Here, CSAA provides five demand letters from Qilin to support its assertion that the amount in controversy exceeds $75,000. Each letter is three to four pages in length, details Qilin's injuries and alleged damages, and itemizes expenses Qilin has allegedly incurred. *ECF No. 9-1*. These letters all demand the policy limit of $100,000. *Id.*

Qilin argues that these letters do not satisfy CSAA's burden to demonstrate the amount in controversy because it contradicts CSAA's offer to settle the claim for only $15,372. *ECF No. 7* at 6. He argues that CSAA has a duty under Montana law to provide a reasonable settlement offer, and if it thinks the case is only worth $15,372 dollars, then the amount in controversy is clearly not met. *Id.* But in the Ninth Circuit, a "settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). The five letters provided by CSAA asserting that the policy limit of $100,000 appear to be a reasonable estimate of the amount Qilin has

put at issue and satisfy CSAA's burden. A defendant does not need to concede to a plaintiff's claims in order to invoke diversity jurisdiction. *Lewis*, 627 F.3d at 400.

Additionally, it is evident from the Complaint itself that Qilin is placing much more at issue than the amount CSAA included in its offer letters. Qilin brought this action for the purpose of seeking a "declaratory judgment that he is entitled to more than CSAA has offered," and refers to CSAA as having "lowballed" Qilin when he sought UIM benefits. *ECF No. 1-2* at 2–3. As noted, the demand letters from Qilin to CSAA are probative in this regard. The letters are lengthy and detailed, include analyses of his injuries and claims, and consistently assert that his damages exceed the policy limits. Even throughout the briefing, Qilin does not deny that he is seeking more than $75,000, nor has he attempted to disavow the letters. *See Cohn*, 281 F.3d at 840. For all of these reasons, the Court finds that the amount in controversy clearly exceeds $75,000.

### B. *BRILLHART* STANDARD

The Federal Declaratory Judgment Act ("FDJA") authorizes federal courts to make a declaration of rights, but the authority is

permissive rather than mandatory. *See GEICO Gen. Ins. Co. v. Tucker*, 2014 WL 1713766, at *1 (D. Ariz. Apr. 30, 2014) (citing *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir.1995), *overruled on other grounds*). To determine whether to abstain from an action under the FDJA, Courts consider the factors set out by the Supreme Court, generally referred to as the *Brillhart* Factors. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). These factors, though not exclusive, have been summarized to find that a court "should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

None of these factors justifies declining jurisdiction over this action. The first factor, to avoid needless determination of state law issues, weighs against declining jurisdiction. This factor is not simply whether the case interprets state law, but whether it does so needlessly. *Id.* Generally, this occurs when there is a parallel state proceeding that will resolve the issues between the parties. *Id.* There is no such parallel proceeding present here, and the issues in this case are not

currently set to be decided in another forum. Quilin concedes that "[t]he only issues in the present action are whether [his] damages are in an amount that will trigger coverage … and the amount of those damages." *EC 7 at 10.* As a result, deciding this case would not involve needless determination of state law. Though this factor is not dispositive, it does weigh against declining jurisdiction.

The second factor seeks to discourage litigants from filing declaratory actions as a means of forum shopping. *Id.* This factor is particularly important when a party files a declaratory judgment action in federal court during the pendency of a state court action presenting the same issues, but which is not removable. *See GEICO Gen. Ins. Co.*, 2014 WL at *3. Here, CSAA did not file a separate action to parallel a non-removable state court action, but instead exercised its right to a federal forum under diversity jurisdiction. CSAA properly invoked diversity jurisdiction and removed the case, as is its statutory right. Based on these circumstances, this factor weighs against declining jurisdiction.

Under the third factor, and as articulated under the previous two factors, asserting jurisdiction would not create duplicative litigation.

There is no evidence of a separate action currently pending in state court and the claims and issues can all be resolved through this action. There is only one action, and as discussed above, CSAA has properly removed the action to federal court. Thus, these factors weigh against declining jurisdiction.

The inconvenience of the venue is a factor the Court may consider, and it does weigh slightly against asserting jurisdiction here, but the other factors outweigh this one. The Court does not find any other persuasive reason for declining jurisdiction over this case. There is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically.

Finally, Qilin, in his reply brief, argues that the Court should decline jurisdiction because this case was improperly filed in the Billings Division rather than the Butte Division. *ECF No. 12* at 5. Although it appears that the case should have been removed to the Butte Division, failure to timely file a motion for change of divisional venue constitutes consent to the existing venue. *L.R. 3.2(c)(3)*.

//

//

## IV. **CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the motion (*ECF No. 6*) to remand is DENIED.

DATED this 29th day of March, 2015.

/s/ Carolyn S. Ostby<br>
United States Magistrate Judge